# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| LAKEITA KEMP, individually and on Behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>NISSAN NORTH AMERICA, INC. and NISSAN MOTOR CO., LTD.,<br><br>        Defendants. | Case No. 3:19-cv-00854<br><br>District Judge William L. Campbell, Jr.<br><br>Magistrate Judge Jeffrey S. Frensley |

### DEFENDANT NISSAN MOTOR CO., LTD.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT PURSUANT TO RULES 12(b)(6), 9(b), AND 8(a)

Defendant Nissan Motor Co., Ltd. moves to dismiss the Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), 9(b), and 8(a).

## I.

### INTRODUCTION

Plaintiff Lakeita Kemp's Complaint improperly lumps together allegations against Defendants Nissan Motor Co., Ltd. ("NML") and Nissan North America, Inc. ("NNA"). Because Plaintiff's Complaint sounds in fraud, doing so violates Federal Rule of Civil Procedure 9(b)'s particularity requirement. Plaintiff's bundled allegations also fail to provide sufficient notice of the alleged claims in violation of Rule 8(a)(2).

It is well-established that where multiple defendants are sued in connection with an alleged fraudulent scheme, a plaintiff cannot satisfy Rule 9(b)'s heightened pleading standard by lumping multiple defendants together. Instead, the complaint must make "specific allegations as to *each* defendant's alleged involvement." *N. Port Firefighters' Pension–Local Option Plan v. Fushi*

*Copperweld, Inc.*, 929 F. Supp. 2d 740, 773 (M.D. Tenn. 2013) (emphasis added).

Plaintiff's Complaint fails to meet this standard here. She largely alleges conduct by "Nissan" or "Defendants" without any effort to distinguish between NML and NNA. By lumping both Defendants together and providing no factual basis to distinguish their conduct, the Complaint does not satisfy the particularity requirement of Rule 9(b) or even basic pleading standards under Rule 8(a)(2).

Plaintiff's claims also should be dismissed because the Complaint fails to plausibly allege that NML, rather than NNA, issued any warranty to Plaintiff or that NML had a special relationship with Plaintiff or otherwise engaged in any transaction with her—all critical elements that Plaintiff must allege to assert her claims.

Plaintiff's claims should also be dismissed without leave to amend, as NML did not market, sell or provide warranties for the vehicles at issue, much less do business with or have a transaction with Plaintiff or any putative class member. Thus, any amendment would be futile.

For these reasons, and those set forth below, the Court should grant this Motion and dismiss Plaintiff's claims against NML without leave to amend.

## II.

## STATEMENT OF FACTS

The facts alleged in this action are already set forth in NNA's pending Motion to Dismiss Class Action Complaint for Failure to State a Claim (Dkt Nos. 21, 22), in which NML has joined (Dkt. No. 26). Accordingly, NML hereby incorporates by reference Section I ("Statement of Facts") of NNA's memorandum in support of that motion. Dkt. No. 22 at 2-3. In addition, NML identifies the following alleged facts, which are relevant to the specific arguments asserted here.

A.  **Plaintiff's Claims Arise Out of the Sale of the Vehicle and the Warranty Accompanying the Vehicle**

Plaintiff's Complaint asserts the same five claims for relief against both NNA and NML. (Cplt. ¶¶ 68–123 (Counts 1–5).) Plaintiff alleges that she is a citizen of Connecticut who purchased a new 2019 model year Nissan Altima vehicle from a Nissan dealer in Connecticut. (*Id.* ¶ 17.) As detailed below, Plaintiff's claims generally arise out of (a) the marketing and sale of the vehicle, specifically the alleged non-disclosure of a purported "defect" in the vehicle's automatic emergency braking system (*see, e.g.*, *id.* ¶¶ 49–51 (alleging that Defendants "knowingly marketed and sold/leased the Class Vehicles with the [alleged defect], while willfully concealing the true risks . . . .")), and (b) the express or implied warranties accompanying the sale of the vehicles (Counts 1–3).

Specifically, Plaintiff's fraud-by-concealment challenge to the marketing and sale of the subject vehicles serves as the basis for Counts 4 and 5 of the Complaint:

- **Count 4, Fraudulent Concealment**, alleging Defendants were "aware of the [alleged defect]" during marketing and sale of subject vehicles and "unlawfully concealed and failed to disclose the [alleged defect] to Plaintiff and the other members of the Class in connection with the sale" (Cplt. ¶¶ 107, 109); and

- **Count 5, Unjust Enrichment**, alleging that "Nissan has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Nissan's concealment of the [alleged defect]" (*id.* ¶ 118).

Plaintiff's warranty claims (Counts 1–3) are each predicated on the warranties issued, either expressly or by operation of law, by the *seller* of the vehicles:

- **Count 1, Violation of the Magnuson-Moss Warranty Act**, alleging, "With respect to Plaintiff's purchase . . ., the terms of Nissan's written warranty and implied warranty

or [*sic*] merchantability became part of the basis of the bargain" (Cplt. ¶ 77);

- **Count 2, Breach of Express Warranty**, alleging, "Nissan's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles" (*id.* ¶ 89); and

- **Count 3, Breach of Implied Warranty**, alleging the "Class Vehicles were bought and sold subject to an implied warranty of merchantability" (*id.* ¶ 99).

B.  **The Complaint Lumps Together Material Allegations Against NNA and NML**

About the only distinction Plaintiff makes between NML and NNA in the Complaint is that NNA is a corporation based in Tennessee and NML is its Japanese parent. (Cplt. ¶¶ 21–22.) All of Plaintiff's allegations simply lump NNA and NML together—defining and referring to them collectively as "Nissan." (*Id.* at 2.) The remainder of the Complaint is replete with undifferentiated references to "Defendants" or a monolithic "Nissan." The following are some examples:

- *Id.* ¶ 3, alleging that "As advertised by *Nissan*, *its* Forward Emergency Barking/Automatic Emergency Braking technology . . . uses radar to detect the possibility of a collision with vehicles or pedestrians" (emphasis added);

- *Id.* ¶ 8, alleging "*Nissan* knew of the Emergency Braking Defect prior to the sale or lease of the Class Vehicles" (emphasis added);

- *Id.*, alleging "*Nissan* failed to disclose and actively concealed the Emergency Braking Defect from Class members and the public, and continued to market and advertise the Class Vehicles" (emphasis added);

- *Id.* ¶ 35, alleging "*Nissan* learned of the Emergency Braking Defect at least as early as 2016" (emphasis added);

- *Id.* ¶ 38, alleging, "*Nissan* collects, reviews, and analyzes detailed information about warranty claims made at *its* dealerships" (emphasis added); and

- *Id.* ¶ 43, alleging, "*Nissan's* knowledge of the Emergency Braking Defect is also clear from *its* July 19, 2018 technical service bulletin ("TSB"), NTB18-041a" (emphasis added).

Beyond NML's status as NNA's parent corporation, the Complaint contains virtually no factual allegations that actually distinguish as between NNA and NML or that specify any independent conduct on the part of NML.[1]

### C. The Warranty Booklet and Technical Service Bulletin Referred to in the Complaint Demonstrate that on Their Face They Were Issued by NNA, Not NML

In point of fact, the warranties governing the subject vehicles were issued by NNA alone. *See* NNA's Motion to Dismiss, Ex. 1 (Dkt. No. 22-1) at 5 & n.1 (2019 warranty information booklet defining "Nissan" as "Nissan North America, Inc."). Likewise, the technical service bulletin referred to in the Complaint (NTB18-041a, a copy of which is attached hereto as Exhibit A) was also issued by NNA alone. *See* Ex. A at 1 (TSB issued by "Nissan North America, Inc.").

---

[1] Plaintiff makes no allegation as to which entity manufactured or assembled the 2019 model year Nissan Altima she purchased, and certainly makes no allegation at all that NML was in the chain of distribution of her Altima at any time.

# III.

# LEGAL ARGUMENT

A. **Plaintiff's Claims Against NML Should Be Dismissed Because Plaintiff Fails to Differentiate the Allegations as Between NNA and NML**

   1. **Rule 9(b)'s Particularity Requirement Is Not Satisfied by a Complaint that Fails to Differentiate the Actions of Multiple Defendants**

A plaintiff alleging fraud[2] must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) and "state with particularity the circumstances constituting fraud or mistake." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (quoting Fed. R. Civ. P. 9(b)). "This rule requires a plaintiff: (1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Id.* (quoting *Ind. State Dist. Council of Laborers & Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.,* 583 F.3d 935, 942–43 (6th Cir. 2009)). Rule 9(b) thus requires that the plaintiff specify the "who, what, when, where, and how" of the alleged fraud. *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006).

Rule 9(b) "exists predominantly for the same purpose as Rule 8: to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008). It "also reflects the rulemakers' additional understanding that, in cases involving fraud and mistake, a more specific form of notice is necessary . . . ." *Id.* "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put [the opposing party] on notice as to the nature of the claim." *Williams v.*

---

[2] In NNA's Motion to Dismiss, in which NML has joined, NNA asserts that Plaintiff's fraudulent concealment claim should be dismissed because it is not a cause of action under Connecticut law. Dkt. No. 22 at 9-10. Even if the Court finds otherwise, Plaintiff's claims against NML should be dismissed for the additional reasons set forth herein.

*Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) (quoting *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988)). When a "complaint makes no attempt to distinguish among [the defendants]," and "relies upon blanket references to acts or omissions by all of the 'defendants,'" it is "inadequate"; "*each individual defendant must be appraised separately of the specific acts of which he is accused, especially in a case involving multiple defendants.*" *Benoav v. Decker,* 517 F. Supp. 490, 493 (E.D. Mich. 1981), *aff'd*, 735 F.2d 1363 (6th Cir. 1984) (emphasis added).

Accordingly, a plaintiff alleging fraud against multiple defendants must make "specific allegations as to each defendant's alleged involvement." *N. Port Firefighters' Pension–Local Option Plan*, 929 F. Supp. 2d at 773. A "group pleading" fails to satisfy Rule 9(b)'s particularity requirement. *D.E.&J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 730 (E.D. Mich. 2003), *aff'd*, 133 F. App'x 994 (6th Cir. 2005).

Applying these principles, this Court has dismissed claims sounding in fraud that fail to distinguish between multiple defendants and thus fail to satisfy the pleading standard set forth in Rule 9(b). *See, e.g.*, *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (affirming dismissal of complaint for failure to state fraud with particularity and holding that a "complaint may not rely upon blanket references to acts or omissions by all of the 'defendants,' for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged."); *see also Triumph Hosp., LLC v. Constr. Mgmt., Inc.*, 2019 WL 3841942, at *5 (M.D. Tenn. Aug. 15, 2019) ("[W]hen a plaintiff pursues fraud claims against multiple defendants, it must make specific allegations as to each defendant's alleged involvement.") (internal citations and quotation marks omitted).

### 2. Failing to Differentiate Between Defendants Also Violates Rule 8(a)(2)'s Notice Requirement

Lumping together allegations against multiple defendants also violates the less stringent requirement of Rule 8(a)(2) because it does not give fair notice of the allegations against each defendant. *See Rotello v. Clayton Homes of Del., Inc.,* 2006 WL 2771018, at *4 (E.D. Tenn. Sept. 25, 2006) (holding that, to comply with Rule 8(a), where a complaint involves multiple defendants, it should make clear which defendants are accused of which wrongs) (citing *Babb v. Bridgestone/Firestone,* 861 F. Supp. 50, 53 (M.D. Tenn. 1993)).

### 3. All of Plaintiff's Claims Against NML Should Be Dismissed

The gravamen of this action is fraud by concealment of the alleged defect during the marketing and sale of the subject vehicles. (*See, e.g.*, Cplt. ¶¶ 8, 109.) However, the Complaint fails to satisfy Rule 9(b)'s particularity requirement and also fails to provide NML with fair notice as required by Rule 8(a)(2). *See* authorities cited *supra* Section III.A. Instead, Plaintiff asserts largely undifferentiated allegations that simply lump NML together with NNA.

Indeed, the Complaint's practice of lumping two distinct entities into a single "Nissan" has led to allegations that are demonstrably false. For example, Plaintiff alleges, "In its Limited Warranty, *Nissan* expressly warranted that *it* would repair or replace defective parts free of charge if the defects became apparent during the warranty period." (Cplt. ¶ 88 (emphasis added).) In truth, NML issued no warranty to Plaintiff. *See* NNA's Motion to Dismiss, Ex. 1 (Dkt. No. 22-1) at 5 (warranty booklet identifying only NNA as warrantor).

Moreover, the ambiguity created by conflating NML and NNA is precisely what Rules 9(b) and 8(a)(2) were designed to avoid. For example, Plaintiff alleges that venue is proper in this district because NNA "resides in this district" and "has marketed, advertised, sold, and leased Class Vehicles within this district." (Cplt. ¶ 16.) Plaintiff makes no such allegations with regard

to NML, nor can she. Other than "engag[ing] in "continuous corporate operations within Tennessee due to its dealings with Nissan NA," (*id.*), Plaintiff does not allege that NML itself conducted any business here subjecting it to this Court's jurisdiction. In other words, Plaintiff fails to allege that NML itself designed, manufactured, tested, marketed, sold, or leased the subject vehicles in this jurisdiction, nor does she allege NML did so in Connecticut. Plaintiff's broad, conclusory allegations that a single "Nissan" conducted these operations are unsupported by the facts as alleged and fail to specify which entity actually did each of the tasks. (Cplt. ¶¶ 36, 49.)[3]

Accordingly, Plaintiff's claims against NML should be dismissed, as the undifferentiated allegations against the two defendants here resemble those that have been rejected on Rule 9(b) or 8(a) grounds. *See, e.g.*, *Bledsoe*, 342 F.3d at 643 (affirming dismissal of complaint for failure to state fraud with particularity and rejecting "blanket reference[] to acts or omissions by all of the 'defendants'"); *Hamm v. Wyndham Resort Dev. Corp.*, 2019 WL 6273247, at *5 (M.D. Tenn. Nov. 25, 2019) (dismissing fraud-based claims because they were not pleaded with particularity as required by Rule 9(b) and dismissing vague, conclusory unjust enrichment claim under Rule 8).

---

[3] Plaintiff cannot rely on the Complaint's conclusory allegations of a purported agency or alter ego relationship between NML and NNA. (*See* Cplt. ¶ 23 (alleging upon "information and belief" that NML "communicates with" NNA "concerning virtually all aspects of the Nissan vehicles it distributes within the United States" and that NNA "acted as an authorized agent and/or alter ego of [NML] while performing activities including, but not limited to, advertising, warranties, warranty repairs, dissemination of technical information, and monitoring the performance of the Class Vehicles in the United States").) Such allegations are wholly conclusory, devoid of any facts, and should be disregarded. *See Trustees of Detroit Carpenters Fringe Benefit Funds v. Patrie Const. Co.*, 618 F. App'x 246, 251–52 (6th Cir. 2015) ("To allow this part of the case to proceed would permit alter-ego claims to proceed solely because a company's operations and personnel had some contact with another company. The amended complaint does not, as it must, plausibly allege '*substantially identical* management, business, purpose, operation, equipment, customers, supervision and ownership.') (emphasis in original); *Jack Tyler Eng'g Co. v. Colfax Corp.*, 2011 WL 6372827, at *2 (W.D. Tenn. Dec. 20, 2011) (holding that sufficient pleading under Rule 8 "require[s] more than labels and conclusions" and that "district court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions.") (internal quotation marks and citations omitted).

At bottom, Plaintiff's Complaint, which sounds in fraud, fails to satisfy Rule 9(b)'s heightened pleading standard and also the notice requirement under Rule 8(a)(2). By bundling allegations and failing to differentiate NML and NNA, the Complaint violates both Rule 9(b) and 8(a)(2) and should be dismissed as to NML.

**B.** **Plaintiff's Claims Against NML Should Be Dismissed Because NML Did Not Issue Any Warranties to Plaintiff or Engage in Any Transactions with Plaintiff**

### 1. The Plausibility Standard under Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a claim is subject to dismissal if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

The Court need not accept legal conclusions or unwarranted factual inferences, or legal conclusions masquerading as factual allegations. *Philadelphia Indem. Ins. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013); *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 274 (6th Cir. 2010). Only well-pleaded *facts* are entitled to be construed in the light most favorable to the party opposing the Motion to Dismiss. *See Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010) (citing *Twombly*, 550 U.S. at 570); *Lillard v. Shelby County Bd. of Ed.*, 76 F.3d 716, 726 (6th Cir. 1996).

### 2. Plaintiff Does Not Plausibly Allege Sales or Warranty Claims Against NML

#### a. NNA Issued the Warranty and the Complaint Does Not Plausibly Allege Otherwise

Plaintiff's warranty claims are premised solely on the warranty *issued by NNA*, not NML, and Plaintiff does not plausibly allege that NML issued any warranty for the subject vehicles, either separately or jointly with NNA. As shown, the written warranty states, on its face, that it was issued by "Nissan North America, Inc." Dkt. No. 22-1 at 5. Likewise, the TSB referenced in the Complaint states that it was issued by NNA, not NML. *See* Ex. A at 1.

Plaintiff makes no plausible allegation that she is a party to a warranty agreement with NML. Because NML was not the warrantor of Plaintiff's vehicle, Plaintiff's express warranty claims against NML should be dismissed. Further, because Plaintiff has failed to allege that NML was the seller of Plaintiff's vehicle and does not allege that she entered into any transaction with NML (*see* discussion *infra*), no warranty of merchantability arises by operation of law, and Plaintiff's implied warranty claims against NML should likewise be dismissed. Finally, Plaintiff's derivative Magnuson-Moss claim fails in the absence of a valid warranty claim.

In *Rhea Cty., Tenn. v. Mack Trucks, Inc.*, 2009 WL 1683249 (E.D. Tenn. June 15, 2009), plaintiff brought an action under a vehicle warranty for replacement or a refund. Plaintiff referred to the "Defendants" throughout the Complaint, but failed to "specify which defendant it is referring to." *Id.* at *2. The Court granted a motion to dismiss brought by one of three defendants because that defendant did not provide the warranty at issue. The Court reasoned, "The warranty on which Plaintiff bases its claim was issued by Mack Trucks, not [defendant]." *Id.* "[Defendant] did not issue the warranty. . . . On the facts alleged by Plaintiff, there is no basis for asserting [defendant] has any liability . . . ." *Id.*

Similarly here, Plaintiff fails to—and, indeed, cannot—plausibly allege that NML issued any warranty. The warranty was issued solely by NNA. Dkt. No. 22-1 at 5. Thus, Plaintiff's warranty claims against NML (Counts 1–3) should be dismissed.

### 3. The Complaint Does Not Plausibly Allege NML Had a Special Relationship or Transaction with Plaintiff as Is Necessary for Plaintiff's Fraudulent Concealment and Unjust Enrichment Claims

Plaintiff's fraudulent concealment claim[4] and unjust enrichment claim (Counts 4–5) fare no better, as these claims, respectively, require that NML had a special relationship with Plaintiff and engaged in a transaction with Plaintiff. Plaintiff does not and cannot plausibly make such allegations here.

Under Connecticut law,[5] fraudulent concealment is a doctrine related solely to tolling the statute of limitations. It is not a cause of action. *McCullough v. World Wrestling Ent. Inc.*, 172 F. Supp. 3d 528, 560 (D. Conn. 2016); *see also Baldwin v. Village Walk Condo., Inc.*, 2010 WL 5095319, at *13 (Conn. Super. Nov. 19, 2010) (General Statute § 52-925, governing tolling of claims in cases of fraudulent concealment, does not create causes of action); *AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc.*, 2014 WL 7270160, at *11 n.17 (D. Conn. Dec. 18, 2014) (Connecticut does not recognize affirmative causes of action for fraudulent concealment). Thus, a claim of fraud generally requires one with a duty to disclose to have made an actionable misrepresentation or omission concerning the product's attributes. *Olson v.*

---

[4] As noted above, NNA has separately moved to dismiss this claim on the ground that it is not a proper cause of action under Connecticut law. Dkt. No. 22 at 9-10.

[5] In exercising its diversity jurisdiction, the court applies the forum state's choice-of-law rules. *Gehafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003). Tennessee employs the familiar "most significant relationship" test derived from the Restatement (Second) of Conflicts of Law. *Nixon v. Waste Mgmt.*, 156 F. App'x 784, 787 (6th Cir. 2005). Since Plaintiff pleads she is a Connecticut resident who purchased her vehicle in Connecticut and seeks to represent a class of other Connecticut residents, NML presumes that Connecticut law has the most significant relationship to the present dispute.

*Accessory Controls & Equip. Corp.*, 757 A.2d 14, 34 (Conn. 2000). A "duty to disclose will arise if the parties share a 'special relationship.'" *DiMichele v. Perrella*, 158 Conn. App. 726, 732, 120 A.3d 551, 554 (2015) (citing *Flannery v. Singer Asset Fin. Co., LLC*, 312 Conn. 286, 313, 94 A.3d 553 (2014)). Such a relationship exists "where the parties stand in some confidential or fiduciary relation to one another . . . ." *DiMichele*, 158 Conn. App. at 732 (listing as examples "principal and agent, executor and beneficiary of an estate, bank and investing depositor, majority and minority stockholders, old friends, or numerous others where special trust and confidence is reposed") (citation and internal quotation marks omitted). However, a "vendor-vendee relationship does not, by itself, constitute a special relationship." *Id.* at 733 (citing *Flannery*, 312 Conn. at 313).

Here, Plaintiff does not even provide any factual allegations to establish a vendor-vendee relationship with NML, much less allege any facts that would demonstrate she had a special relationship with NML. She has alleged nothing more than the fact that she purchased a vehicle from a Nissan dealer, (Cplt. ¶ 17), and that NNA distributed vehicles to dealers. (Cplt. ¶ 23.) As such, Plaintiff fails to allege any facts that create a duty to disclose by NML as is necessary for a claim of fraud. Certainly, no facts are alleged that would even come close to satisfying the heightened pleading standard under Rule 9(b).

Similarly, Plaintiff's claim for unjust enrichment depends on an alleged consumer transaction in which "Nissan" allegedly "benefited from selling and leasing" the subject vehicles. (Cplt. ¶ 118.) Here, Plaintiff fails to—and, indeed, cannot—plausibly allege that she entered into any transaction with NML; indeed, no facts whatsoever are alleged other than the conclusory and improperly-bundled allegation that "Nissan" sold the vehicles at issue.

Thus, Plaintiff's remaining claims for fraudulent concealment and unjust enrichment should be dismissed on this separate ground.

## C. Leave to Amend Would Be Futile

When ruling on a motion to dismiss, a court is within its discretion to refuse a party the opportunity to amend the Complaint if it "concludes that the pleading as amended could not withstand a motion to dismiss." *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) (quoting *Martin v. Associated Truck Lines, Inc.,* 801 F.2d 246, 248 (6th Cir. 1986)); *see also Harper v. Mastroianni*, 2017 WL 3271172, at *2 (6th Cir. Mar. 23, 2017) ("In considering whether to grant a motion to amend under Rule 15, a court should consider whether the amendment would be futile.").

Leave to amend would be futile here. Plaintiff's claims against NML are premised on either an alleged failure to disclose or a breach of warranty. But NML made no warranties or sales to Plaintiff. Even if Plaintiff separated her allegations against NNA and NML in an amended complaint, she could not allege any facts against NML that would withstand a motion to dismiss. Thus, any further amendment would be a waste of judicial resources.

## IV.

## CONCLUSION

For these reasons, NML respectfully requests that the Court grant its Motion and dismiss all of Plaintiff's claims as to NML.

Dated: January 7, 2020 Respectfully submitted,

*s/ Brigid M. Carpenter*
Brigid M. Carpenter (TN B.P.R. No. 18134)
BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ, P.C.
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
(615) 726-7341
bcarpenter@bakerdonelson.com

E. Paul Cauley, Jr.*
S. Vance Wittie*
DRINKER, BIDDLE & REATH, LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201
Paul.cauley@dbr.com
Vance.wittie@dbr.com

*Attorneys for Defendants*
NISSAN NORTH AMERICA, INC. and
NISSAN MOTOR CO., LTD.
*admitted *pro hac vice*

## CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of the foregoing Memorandum of Law was served on counsel for the parties listed below via first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

J. Gerard Stranch, IV
Branstetter, Stranch & Jennings, PLLC
223 Rose L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
gerards@bsjfirm.com

Lynn A. Toops* (No. 26386-49)
Lisa M. La Fornara* (No. 35280-53)
COHEN & MALAD, LLP
One Indiana Square
Suite 1400
Indianapolis, IN 46204
(317) 636-6481
ltoops@cohenandmalad.com
llafornara@cohenandmalad.com

this 7th day of January, 2020.

                *s/ Brigid M. Carpenter*
                Brigid M. Carpenter