UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

LAKEITA KEMP, individually and on
behalf of all others similarly situated,

           Plaintiff,

v.

NISSAN NORTH AMERICA, INC. and
NISSAN MOTOR CO., LTD.,

           Defendants.

Case No.: 3:19-cv-00854

**JURY TRIAL DEMANDED**

District Judge William L. Campbell, Jr.
Magistrate Judge Chip Frensley

**<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

# Table of Contents

I.   Nature of the Case ............................................................................................................ 2

II.  Jurisdiction and Venue .................................................................................................... 4

III. Parties ................................................................................................................................ 5

   A. Plaintiff ........................................................................................................................ 5

   B. Defendants .................................................................................................................... 6

IV. Factual Allegations .......................................................................................................... 7

   A. The Presence of the Emergency Braking Defect in the Class Vehicles ........................... 7

   B. Nissan Knew of the Emergency Braking Defect Prior to Sale or Lease of the Class
      Vehicles ...................................................................................................................... 10

   C. Nissan's Inadequate Technical Service Bulletin ........................................................... 14

   D. Nissan Received Pre-Suit Notice Multiple Times and Ways ......................................... 15

   E. Nissan's Marketing and Concealment ......................................................................... 16

V.  Class Action Allegations ............................................................................................... 17

VI. Claims for Relief ............................................................................................................ 21

   A. Claims Brought on Behalf of The Nationwide and Connecticut Classes ........................ 21

      COUNT 1
      VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
      15 U.S.C. §§ 2301, *et seq.* ........................................................................................ 21

   B. Claims Brought on Behalf of the Connecticut Class ...................................................... 24

      COUNT 2

      BREACH OF EXPRESS WARRANTY ............................................................................ 24

      COUNT 3

      BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY ................................. 26

      COUNT 4

      FRAUDULENT CONCEALMENT .................................................................................. 28

      COUNT 5

      UNJUST ENRICHMENT ................................................................................................ 29

VII. Relief Requested ............................................................................................................ 30

VIII. Demand for Jury Trial .................................................................................................. 31

Plaintiff Lakeita Kemp ("Plaintiff"), individually and on behalf of the other members of the below-defined class she respectively seeks to represent (collectively, the "Class"), hereby alleges against Nissan North America, Inc. ("Nissan NA") and Nissan Motor Co., Ltd. ("Nissan MC") (collectively, "Defendants" or "Nissan"), upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief, based upon investigation, as follows:

## I.     Nature of the Case

1.     Plaintiff brings this case, seeking damages and equitable relief, individually and on behalf of the other Class members, each of whom purchased or leased one or more model year 2017-2019 Nissan vehicles equipped with Forward Emergency Braking or Automatic Emergency Braking technology (the "Class Vehicles").

2.     Each of the Class Vehicles contains a defective emergency braking system that exposes drivers and passengers to the risk of sudden and unexpected collision.

3.     As advertised by Nissan, its Forward Emergency Braking/Automatic Emergency Braking technology (herein referred to as the "Emergency Braking System") uses radar to detect the possibility of a collision with vehicles or pedestrians. In its intended functionality, the Emergency Braking System will apply an emergency brake, causing the vehicle to decelerate and stop, in the event that an imminent collision is detected.

4.     Nissan first offered Forward Emergency Braking technology on the model year 2015 Nissan Murano. In recent years, in an effort to appear at the forefront of emerging autonomous driving technology, it has expanded the application of that technology to other models, and has re-branded this same technology as Automatic Emergency Braking technology. Beginning with model year 2018 vehicles, Nissan made what is now called Automatic

Emergency Braking a standard feature on its Rogue, Rogue Sport, Murano, Altima, Maxima, Armada, Pathfinder, Leaf and Sentra vehicles.

5.     Nissan's Emergency Braking System, however, is not road ready.  It suffers from a serious defect, wherein the Emergency Braking System engages suddenly and unexpectedly when no collision is imminent, and a driver has no intention of stopping her vehicle.  This defect is referred to herein as the Emergency Braking Defect. The Emergency Braking Defect is a defect in material and workmanship in that Nissan did not design the Emergency Braking System to engage when no collision is imminent and a driver or the vehicle has no intention or need of stopping the vehicle.

6.     Due to the Emergency Braking Defect, owners and lessees of Class Vehicles have experienced sudden and unexpected braking on railroad tracks, on bridges, in intersections, and other driving situations that have placed them at serious and unreasonable risk of side-on or rear-end collision.

7.     The Emergency Braking Defect is a uniform defect, existing within all Class Vehicles, and is often experienced at extremely low mileages, within Nissan's 36,000 mile limited warranty period.

8.     Nissan knew of the Emergency Braking Defect prior to the sale or lease of the Class Vehicles.  This is evidenced by the reports of owners and lessees complaining about the Emergency Braking Defect to Nissan and Nissan dealers, as well as the multitude of consumer complaints collected by the National Highway Traffic Safety Administration's ("NHTSA") Office of Defects Investigation ("ODI").  Despite this knowledge, Nissan failed to disclose and actively concealed the Emergency Braking Defect from Class members and the public and continued to market and advertise the Class Vehicles.

9. Nissan sold hundreds of thousands of Class Vehicles despite knowing that the Emergency Braking System engages suddenly and unexpectedly, posing a safety hazard to Plaintiff, the other Class members, and others sharing the road with Class Vehicles.

10. Purchasers and lessees who have complained to Nissan about the Emergency Braking Defect have been told that their vehicle is fine and have been refused repair or other adequate remedy.

11. The Emergency Braking Defect inhibits Plaintiff's and the other Class members' expected, comfortable, and safe use of their Class Vehicles, and exposes them to the risk of serious injury resulting from sudden brake failure.

12. As a result of Nissan's selling and leasing vehicles with the Emergency Braking Defect, Plaintiff and the other Class members were damaged in that they purchased Class Vehicles that they would not have purchased, or at least paid more for their Class Vehicles than they would have paid, had they known about the Emergency Braking Defect.

## II. Jurisdiction and Venue

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) and (d) because Plaintiff is a citizen of a different state than Defendants, there are more than 100 Class members nationwide, and the amount in controversy for the Class exceeds $5,000,000 exclusive of costs and interest.

14. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

15. This Court has personal jurisdiction over Nissan NA because Nissan has its principal place of business in Tennessee and in this district. Moreover, Nissan NA is authorized

4

to do business in this district and conducts substantial business in this district. This Court has personal jurisdiction over Nissan MC because it engages in continuous corporate operations within Tennessee due to its dealings with Nissan NA.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 with respect to Nissan NA because Nissan NA resides in this district. Additionally, Nissan NA has marketed, advertised, sold, and leased Class Vehicles within this district. Venue is proper in this district pursuant to 28 U.S.C. § 1391 with respect to Nissan MC because Nissan MC is not a resident of the United States and may thus be "sued in any judicial district."

## III.     Parties

### A.     Plaintiff

17.     Lakeita Kemp is a citizen of Connecticut. Plaintiff Kemp owns a 2019 Nissan Altima, which she purchased new from a Nissan dealer in Connecticut in 2019. Before purchasing her 2019 Altima, Plaintiff Kemp reviewed Nissan's promotional materials regarding the vehicle and interacted with at least one sales representative at an authorized Nissan dealership.

18.     Nissan failed to disclose the Emergency Braking Defect to Plaintiff Kemp before she purchased her Altima, despite Nissan's knowledge of the defect, and Plaintiff Kemp, therefore, purchased her Altima with the incorrect understanding that it would be a safe and reliable vehicle. Had Plaintiff Kemp known about the Emergency Braking Defect, she would not have purchased her Altima, or certainly would not have paid as much for it as she did.

19.     Within weeks after her purchasing the vehicle, Plaintiff Kemp's 2019 Altima began experiencing the Emergency Braking Defect. Plaintiff Kemp has most commonly

experienced the Emergency Braking Defect in parking garages, where her brakes lock up, suddenly and forcefully, as she approaches an up ramp.

20. Plaintiff Kemp has made her Nissan dealer aware of the Emergency Braking Defect, but has not been provided any effective remedy.

**B.    Defendants**

21. Defendant Nissan NA is a California corporation with its principal place of business in Franklin, Tennessee. Nissan NA engages in the design, manufacturing, advertising, and marketing of Nissan automobiles, including the Class Vehicles. It markets and sells the Class Vehicles nationwide, including in Connecticut and Tennessee.

22. Defendant Nissan MC is a Japanese corporation headquartered in Yokohama, Japan. Nissan NMC is the parent corporation of Nissan NA and designs, manufactures, distributes, markets and sells Nissan automobiles.

23. Upon information and belief, Nissan MC communicates with Nissan NA concerning virtually all aspects of the Nissan vehicles it distributes within the United States. At all relevant times, Nissan NA acted as an authorized agent and/or alter ego of Nissan MC while performing activities including, but not limited to, advertising, warranties, warranty repairs, dissemination of technical information, and monitoring the performance of the Class Vehicles in the United States.

24. Upon information and belief, and at all relevant times, Nissan MC has the contractual right to exercise, and in practice has exercised, control over Nissan NA's work, including, but not limited to, the design of the Class Vehicles, the manner of Class vehicles' marketing, the scope of written warranties, the scope of repairs in practice to be covered under warranty, and representations made and facts withheld from consumers and the public about the

Emergency Braking Defect. Nissan MC has been directly involved in assisting, directing and controlling Nissan NA and Nissan NA's authorized dealers, handling of Class Member complaints regarding the Emergency Braking Defect.

25. Nissan MC has held Nissan NA out as its agent for all purposes in the United States, especially as it relates to sales and marketing of Class Vehicles and for ongoing management of relationships with purchasers and lessees of Class Vehicles. It established Nissan NA as a wholly-owned subsidiary company and allows Nissan NA to use to the name and likeness of Nissan throughout the United States. Nissan MC provided Nissan NA with marketing and technical materials avoiding any distinction between Nissan NA and Nissan MC and instead representing Nissan NA as nothing less than Nissan MC's presence in the United States for purposes of selling and leasing "Nissan" branded vehicles and providing relating services.

IV. **Factual Allegations**

A. **The Presence of the Emergency Braking Defect in the Class Vehicles**

26. Plaintiff's vehicle suffers from the Emergency Braking Defect, which results in the emergency brake on her vehicle suddenly and unexpectedly engaging, bringing her vehicles to a halt wherever they may be.

27. Upon information and belief, Nissan introduced its Emergency Braking System as an optional feature in its model year 2015 Murano.[1]

28. Initially, Nissan called its Emergency Braking System "Forward Emergency Braking." From model year 2015 through model year 2017, Nissan offered its Emergency

---

[1] See "2015 Nissan Murano – Forward Emergency Braking System (if so equipped)," available at https://www.youtube.com/watch?v=J-qiiVMReLw

Braking System as an optional feature on numerous models, including the Rogue, the Altima, and the Maxima.[2]

29.    For the 2017 model year Rogue, Nissan introduced a series of mid-year enhancements, which included standard Forward Emergency Braking.[3]

30.    For the 2018 model year, Nissan re-branded Forward Emergency Braking as "Automatic Emergency Braking."[4] Nissan also made it standard on seven of its most popular models: the Rogue, Rogue Sport, Altima, Murano, LEAF, Pathfinder, Maxima, and Sentra (except manual-transmission equipped and all NISMO versions).[5]

31.    Based on the uniformity of experiences with the Emergency Braking Defect across models and model years, as further detailed below, it is evident that there is no material difference in the Emergency Braking Systems in the Class Vehicles with respect to the Emergency Braking Defect.

32.    As advertised by Nissan, its Emergency Braking System "uses radar technology to monitor a vehicle's proximity to the vehicle ahead, giving the driver audible and visual display warnings to help the driver reduce the vehicle's speed if a potential frontal collision is detected.

---

[2] *See, e.g.,* "2016 Nissan Maxima – Forward Emergency Braking System (if so equipped)," available at https://www.youtube.com/watch?v=SAQ7XwL2wm0;

"2017 Nissan Altima – Forward Emergency Braking System (if so equipped)," available at https://www.youtube.com/watch?v=FfGcJQJk_DYl; "2017 Nissan Rogue – Forward Emergency Braking System (if so equipped)," available at https://www.youtube.com/watch?v=N6AukjeuGTA

[3] *See* "2017.5 Nissan Rogue Press Kit," available at https://nissannews.com/en-US/nissan/usa/presskits/us-2017-5-nissan-rogue-press-kit

[4] *See* "Nissan to Offer Standard Automatic Emergency Braking (AEB) on One Million U.S. Vehicles in 2018 Model Year," available at https://nissannews.com/en-US/nissan/usa/releases/nissan-to-offer-standard-automatic-emergency-braking-aeb-on-one-million-u-s-vehicles-in-2018-model-year?mode=print

[5] *See Id.*

If the driver fails to respond, the AEB system can apply the brakes, helping the driver to avoid the collision or reduce the speed of impact if it is unavoidable."[6]

33.     What Nissan does not advertise, and does not inform purchasers and lessees of the Class Vehicles, is that its Emergency Braking System suffers from the Emergency Braking Defect, which results in the emergency brake on their vehicles suddenly and unexpectedly engaging even in the complete absence of another vehicle or other obstacle on the road ahead.

34.     Based on the reports of those who have experienced the Emergency Braking Defect, as further detailed below, this defect is often experienced on railroad tracks and bridges. Owners and lessees of Class Vehicles have found themselves stopped in the middle of railroad tracks due to the Emergency Braking Defect.  Other owners and lessees of Class Vehicles have recalled experiencing the Emergency Braking Defect on highways and at high speeds.

35.     The Emergency Braking Defect poses a clear and significant safety risk to Class Vehicle occupants because it can unexpectedly render the Class Vehicles helplessly at risk of a side-on collision on train tracks or in an intersection, because it puts the Class Vehicles at a heightened risk of being rear-ended (including at high speeds), and because it can prevent the Class Vehicles from moving out of the way of danger.

36.     Moreover, as further detailed below, owners and lessees of Class Vehicles, like Plaintiff, experience the Emergency Braking Defect at inordinately low mileages, further evidencing the fact that it is a fundamental and uniform defect across the Class Vehicles.

---

[6] See "Nissan Intelligent Safety Shield Technologies," available at https://www.nissanusa.com/experience-nissan/news-and-events/car-safety-features-technology.html

**B. Nissan Knew of the Emergency Braking Defect Prior to Sale or Lease of the Class Vehicles**

37.     On information and belief, Nissan learned of the Emergency Braking Defect at least as early as 2016, and certainly well before Plaintiff and Class members purchased or leased their Class Vehicles, through sources such as pre-release evaluation and testing; early consumer complaints made directly to Nissan, collected by NHTSA ODI, and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Nissan dealers; as well as through other internal sources unavailable to Plaintiff prior to discovery.

38.     During the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles, Nissan necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicle's Emergency Braking Systems, particularly the basic engineering principles behind the function of the systems and the systems' responses to expected conditions they would encounter in ordinary use.

39.     An adequate pre-release analysis of the design, engineering, and manufacture of the Emergency Braking Systems in the Class Vehicles would have revealed to Nissan that the systems were defective and caused vehicles to suddenly and unexpectedly stop during normal driving events, such as when vehicles encountered train tracks or inclines.

40.     Further, consumers complain of experiencing the Emergency Braking Defect at low mileages, within the warranty period. Upon information and belief, Nissan collects, reviews, and analyzes detailed information about warranty claims made at its dealerships and service centers, including the type and frequency of such claims. Complete data on such claims is exclusively within Nissan's control and unavailable to Plaintiff without discovery.

41.     Online resources reveal that consumers complained to Nissan about the Emergency Braking Defect starting with, at least, model year 2016 vehicles, and that these complaints have continued unabated through the present day.

42.     For example, online complaints available through National Highway Traffic Safety Administration state the following:

- **2016 Nissan Altima, Incident Dated October 1, 2016**
  "The contact owns a 2016 Nissan Altima.  While driving various speeds, the Forward Emergency Braking warning indicator illuminated and caused the vehicle to slow down and then stop.  The contact took the vehicle to a dealer, but there was no resolution for the issue with the emergency brake.  The manufacturer was notified of the issue.  The failure mileage was 7,259."

- **2016 Nissan Rogue, Incident Dated July 2, 2018**
  "The vehicle automatically applies the brake in some instances . . . Service has had the entire body control module replaced, but electrical issues still persist.  Multiple dealers have not been able to recreate the problem even though issues are still present.  Significant safety hazard by vehicle automatically applying brake randomly and Nissan still does nothing to resolve the issue."

- **2017 Nissan Rogue, Incident Dated August 30, 2017**
  "ABS braking system goes on when driving car for no apparent reason.  No other cars or obstacles around.  This has happened 7 times.  Speed usually between 30/35 MPH."

- **2017 Nissan Rogue, Incident Dated October 11, 2017**
  "On October 11, 2017, the vehicle's [Emergency Braking System] caused the vehicle to unexpectedly brake while moving at approximately 65 mph on the interstate 10 freeway.  This malfunction nearly caused a serious accident which could have resulted in serious injuries.  We immediately contacted the Nissan dealer and they did have the vehicle towed to their service department for inspection.  They have had the vehicle for approximately 1 week and are now contacting us requesting that we pick up the vehicle, despite the fact that they have not repaired the vehicle . . . ."

- **2017 Nissan Rogue, Incident Dated October 18, 2017**
  "The first time the vehicle malfunctioned, I was driving in a grocery store parking lot with a personal friend and suddenly the car's emergency brake protection activated, jolting the car to a stop.  The second occurrence was in a parking deck (different from the first location) and the car again activated the emergency brake protection system, jolting the car to a stop.  I then felt this was a safety issue and brought this into the Nissan dealership.  They checked the car and called reporting they could not find anything wrong with the car and I should pick it up.  I picked the car up and continued to drive it until I switched cars with a personal friend who used the car to drive one mile back to home down a 4 lane road.  Upon coming to an intersection, she reports she began slowing

down and got in a turn lane to make a left onto our neighborhood road and as she was approaching the light, the car activated the emergency braking system, again jolting the car to a stop. She states during and after the car came to a complete stop, she kept her foot on the brake the entire time and while decompressing the brake, the car then jolted forward crashing into the car in front of her. I had the car towed in to the Nissan dealership and had corporate Nissan step in to investigate the car. 6 weeks later they investigated the car reporting that no error was found with the car and again I should pick up my vehicle. I requested specific tests and asked the testing process for the car and was advised by the investigation department that they could not disclose that information and that the testing and results were 'property of Nissan' and that they were not offering any further assistance."

- **2017 Nissan Rogue, Incident Dated October 26, 2017**
  "On 10-26-2-17 while traveling at approximately 35 mph the vehicle's Forward Emergency Braking System (FEB) suddenly and unexpectedly activated, bringing the car to a full and complete stop in the middle of the road. . . . There were no adverse conditions, obstructions, or vehicles within a dangerous distance to have caused the activation. . . . I returned the vehicle to the dealership were I purchased the car. After four days of diagnostic and road testing I was told that according to Nissan Tech Line, since the dealership was unable to duplicate the malfunction during the test drive the car is considered operational and safe and could be returned to the customer . . . ."

- **2017 Nissan Rogue, Incident Dated January 28, 2018**
  "A second totally unnecessary deployment again occurred, this time @ 8:43 AM. I was again on the Southbound Major Deegan expressway . . . speed 52 MPH with the cruise control engaged, when the Forward Emergency Brake System automatically deployed, for about 2 to 3 seconds. Again, there was no car immediately in front of me; no debris on the roadway; nothing that would alert the sensor."

- **2017 Nissan Rogue, Incident dated February 8, 2018**
  "(FEB) Forward Emergency Braking System Faulty. I have filed another claim before this but there has been more development and answers to the unknown as to why it is doing this. I spoke to Nissan's arbitration dept last night and they have found that it is some traffic lights that are causing an interference and causing this system to set off audible beep followed by a red light (according to user manual it is the FEB emergency warning indicator). It will then brake on its own. . . . I am still fighting with Nissan, but as of last night, they said Nissan had no interest in replacing or letting me repurchase at this time . . . ."

- **2018 Nissan Rogue, Incident Dated April 23, 2018**
  "The emergency braking engages without reason. This has led to 2 near misses. Once the car just stopped in the road. I thought it might have misinterpreted a snow pile. Then, driving over a train crossing, the car just stopped. Luckily I was able to get it moving before a train came. Very scary! When I called the service department, they were not very concerned."

- **2017 Nissan Maxima and 2018 Rogue, Incidents Dated May 28, 2018 and prior**

"The problem began in my 2017 Nissan Maxima. I told the dealership that the emergency automatic braking system initiated while no other cars were around. They traded me in to the 2018 Nissan Rogue and the same issue has occurred 3 times in this vehicle. Each time, there were no other vehicles around. The dealership claimed there is nothing wrong with my vehicle. It wasn't until I contacted corporate that they admitted they know there's a defect, but no fix was available yet. They knowingly jeopardized my infant son's safety and lied to me. This defect is scary and shouldn't be allowed to be swept under the rug by dealerships. I no longer feel safe driving with Nissan."

- **2018 Nissan Rogue, Incident Dated July 2, 2018**
  "Forward Emergency Braking System engages while approaching a metal roadway surface and comes to a complete and abrupt stop. The roadway is a driveway on a private property. This vehicle is equipped with a safety system designed to prevent collisions with objects ahead, but engages when there is no object in front. The dealership has been aware of this issue since July 5, 2018 and the manufacturer has been aware since July 26, 2018. In several instances, motorist travelling behind were unexpectedly surprised and forced to take evasive maneuvers to avoid collision."

- **2018 Nissan Rogue, Incident Dated September 24, 2018**
  "The contact stated that the vehicle's automatic braking feature independently activated while the vehicle was being driven at various speeds. There were no obstacles in the vehicle's path. The failure occurred without warning on approximately six occasions. . . . The failure mileage was approximately 1,600."

- **2018 Nissan Rogue, Incident Dated September 30, 2018**
  "Auto emergency braking is activating when there is no vehicle or obstacle in front of me. It happened the first time I left the dealer on an open highway. It happened again in a dark parking garage, and again when I was going less than 10 miles an hour over railroad tracks. It happened to my husband going over a bridge with metal expansion joints. Good thing no one was behind us when it happened."

- **2018 Nissan Rogue, Incident Dated October 23, 2018**
  "While accelerating on a county street, at almost 40 MPH, my car decided to suddenly brake and almost immediately stop. It vibrated and we heard a loud grinding type noise. I removed my foot from accelerator, and after just a second, the braking stopped and I was able to accelerate again. I was almost rear-ended by the car behind me. No warning lights or sounds were heard. The car has about 15,500 miles. This is the second time that this has happened. . . . I'm scared to drive this on the freeway, or actually anywhere I want to go more than 10 miles per hour . . . ."

- **2018 Nissan Rogue, Incident Dated November 13, 2018**
  "While moving at 35 MPH on a paved surface street with no obstacles/cars in front of me or behind me and a green light at the next traffic light, the car made a high pitched noise and came to a full stop. Seemed as if the emergency braking system engaged for no apparent reason. Could have caused a rear end collision if anyone were behind me or if I were on the highway."

- **2018 Nissan Leaf, Incident Dated May 15, 2018**
  "While driving forward, the vehicle suddenly, unexpectedly and violently applies the brakes without any driver input whatsoever! There are no other vehicles or pedestrians in the vicinity at the time. This sudden braking problem began on or about 5/15/18 and happened on several occasions after that. Twice while entering the underground parking garage at an office building and twice while driving on a city street. Vehicle has been at the local Nissan dealer for over a week but neither the dealership nor the manufacturer apparently has any idea how to fix the problem. They think that there is a fault in the Automatic Emergency Braking system. The service manager told me that other instances of the same issue have been reported to Nissan. The salesperson indicated that there were 4 other similar cases at their dealership alone."

43.     As the complaints reveal, Nissan was repeatedly notified of the Emergency Braking Defect by customers and dealers. Further, federal law requires automakers like Nissan to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement, backed by criminal penalties for violation, of confidential disclosure of defects by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000). Thus, automakers like Nissan should (and do) monitor NHTSA databases for consumer complaints regarding their automobiles as part of the automakers' ongoing obligation to identify potential defects in their vehicles.

44.     The complaints, moreover, show that owners and lessees of the Class Vehicles considered the Emergency Braking Defect to be a material safety issue to the reasonable consumer.

### C.     Nissan's Inadequate Technical Service Bulletin

45.     Nissan's knowledge of the Emergency Braking Defect is also clear from its July 19, 2018 technical service bulletin ("TSB"), NTB18-041a.

46.     NTB18-041a addresses unexpected operation of the Emergency Braking System in 2017-18 Rogue, Rogue Sport, and Rogue Hybrid vehicles, and admits that the Emergency

Braking System operates unexpectedly in these vehicles. NTB18-041a provides a purported repair for the unexpected operation of the Emergency Braking system in these vehicles.

47. NTB18-041a, however, does not adequately address the Emergency Braking Defect in any of the Class Vehicles.

48. First, NTB18-041a is not a recall, and an owner or lessee of one of the covered Rogue models must first experience the inherently dangerous Emergency Braking Defect before a repair is offered pursuant to NTB18-041a. Thus, Nissan requires owners and lessees of covered Rogue models to risk sudden collision before it even offers the purported repair.

49. Second, the purported fix provided in NTB18-041a is ineffective and does not remedy the Emergency Braking Defect. This is evident from Plaintiff Kemp's experience. Plaintiff Kemp reported the Emergency Braking Defect to her Nissan dealership in July 2018, and was assigned an incident number. And although Plaintiff Kemp has brought her vehicle into the Nissan dealership since the release of NTB18-041a, the dealership has not remedied the Emergency Braking Defect in Plaintiff Kemp's vehicle.

**D. Nissan Received Pre-Suit Notice Multiple Times and Ways**

50. Beginning in or around May 2019, Plaintiff Kemp began communicating with Nissan, through her dealership, about problems with her Altima as they relate to the Emergency Braking Defect. Plaintiff Kemp presented her car for repair at Nissan dealerships multiple times. On or around July 16, 2019, Plaintiff Kemp sent her first letter to Nissan North America, Inc. detailing the problems with her vehicle. She sent a follow up communication on or around July 18, 2019. Throughout this time period Plaintiff Kemp contacted numerous general managers, consumer affairs call center reps, and other employees and agents of Nissan in an attempt to have her car repaired. These communications continued through the filing of this Complaint.

### E. Nissan's Marketing and Concealment

51.     Upon information and belief, Nissan knowingly marketed and sold/leased the Class Vehicles with the Emergency Braking Defect, while willfully concealing the true risks posed by the Emergency Braking Systems.

52.     Nissan directly markets the Class Vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media.

53.     Nissan's marketing material describes the Class Vehicles as "intelligent" and as automatically deploying emergency braking to avoid a collision.

54.     In practice, the Class Vehicles are not so intelligent that they only deploy emergency braking to avoid a collision.  Nissan concealed the fact that the Class Vehicles suffer from the Emergency Braking Defect which causes the Class Vehicles to stop suddenly and unexpectedly even when there is no risk of colliding with a vehicle or pedestrian in front of the Class Vehicle.

55.     Nissan knowingly misled Class members about the true, defective nature of the Class Vehicles.  As detailed above, upon information and belief, Nissan has been aware of the Emergency Braking Defect since at least 2016, before Plaintiff and the other Class members purchased or leased their Class Vehicles, through pre-release evaluation and testing, and the numerous and consistent complaints about the Emergency Braking Defect made directly to Nissan, received through dealerships, and collected by NHTSA.

56.     In sum, Nissan has actively concealed the existence and nature of the Emergency Braking from Class members since at least 2016 despite its knowledge of the existence and pervasiveness of the Emergency Braking Defect.

57.     By engaging in the conduct described above, Nissan has concealed, and continues to conceal, the Emergency Braking Defect from Class members.  If Class members had knowledge of the information Nissan concealed, they would not have purchased or leased the Class Vehicles or would have paid less to do so.

**V.     <u>Class Action Allegations</u>**

58.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2) and/or (c)(4), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

59.     Plaintiff seeks to represent the class as defined below as Court appointed class representative.

60.     Plaintiff Kemp seeks to represent the following classes:

- All current and former owners or lessees of Class Vehicles (as defined herein) that purchased or leased in the United States of America (the "Nationwide Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Connecticut (the "Connecticut Class").

61.     Excluded from both the Connecticut Class are Defendants and any of their affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members.  Plaintiff reserves the right to modify or amend these Connecticut Class definitions as appropriate during the course of this litigation.

17

62.     The Classes expressly disclaim any recovery in this action for personal injury resulting from the Emergency Braking Defect, without waiving or dismissing any such claims.

63.     This action has been brought and may properly be maintained on behalf of the Connecticut Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

64.     **Numerosity — Federal Rule of Civil Procedure 23(a)(1).**  The members of the Connecticut Class are so numerous and geographically dispersed that individual joinder of all class members is impracticable.  While Plaintiff is informed and believes that there are not less than one thousand members of the Connecticut Class, the precise number of the Connecticut Class is unknown to Plaintiff, but may be ascertained from Nissan's books and records, as well as records from state Departments of Motor Vehicles. Connecticut Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

65.     **Commonality and Predominance — Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Connecticut Class members, including, without limitation:

a.      whether the Emergency Braking Systems in the Class Vehicles are defective;

b.      whether Nissan knew or should have known about the Emergency Braking Defect, and, if yes, how long Nissan has known or should have known of the Emergency Braking Defect;

c.    whether the defective nature of the Class Vehicles constitutes a material fact that reasonable consumers would have considered in deciding whether to purchase or lease a Class Vehicle;

d.    whether Nissan had a duty to disclose the defective nature of the Class Vehicles to Plaintiff and Class members;

e.    whether Nissan omitted and failed to disclose material facts about the Class Vehicles;

f.    whether Nissan's concealment of the true defective nature of the Class Vehicles induced Plaintiff and Class members to act to their detriment by purchasing or leasing Class Vehicles;

g.    whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

h.    whether Plaintiff and the Class members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

i.    whether Nissan was unjustly enriched though the sale of the Class Vehicles; and

j.    whether Nissan should be declared financially responsible for notifying all Class members of the problems with the Class Vehicles and for the costs and expenses of permanently remedying the Emergency Braking Defect in the Class Vehicles.

66.    **Typicality — Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the other Connecticut Class members' claims because Plaintiff and the Connecticut Class members purchased or leased Class Vehicles that suffer from the Emergency Braking Defect.  Neither Plaintiff nor the other Connecticut Class members would have purchased the

Class Vehicles, or, alternatively, would have paid less for the Class Vehicles, had they known of the Emergency Braking Defect. Plaintiff and the other Connecticut Class members suffered damages as a direct proximate result of the same wrongful practices in which Nissan engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other Connecticut Class members.

67. **Adequacy of Representation — Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Connecticut Class that he seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The Connecticut Class' interests will be fairly and adequately protected by Plaintiff and her counsel.

68. **Declaratory and Injunctive Relief — Federal Rule of Civil Procedure 23(b)(2).** Nissan has acted or refused to act on grounds generally applicable to Plaintiff and the other Connecticut Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Connecticut Class members as a whole.

69. **Superiority — Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Connecticut Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Nissan, so it would be impracticable for the Connecticut Class members to individually seek redress for Nissan's wrongful conduct. Even if the Connecticut Class members could afford litigation the court system could not. Because of the

relatively small size of the individual Class members' claims (compared to the cost of litigation), it is likely that only a few Class members could afford to seek legal redress for Nissan's misconduct.  Absent a class action, Class members will continue to incur damages, and Nissan's misconduct will continue without remedy. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Class treatment of common questions of law and fact would be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

**VI.**     **Claims for Relief**

      **A.**     **Claims Brought on Behalf of The Nationwide and Connecticut Classes**

**COUNT 1**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. §§ 2301, *et seq.***

70.     Plaintiff incorporates by reference each allegation set forth in paragraphs 1-69.

71.     Plaintiff brings this Count on behalf of the Nationwide Class and the Connecticut Class. Prior to bringing this case on behalf of a class Plaintiff Kemp sent Nissan appropriate pre-suit notice informing Nissan of her intent to pursue claims under the Magnuson-Moss Warranty Act. To date, Nissan has failed to correct the problems with her vehicle and is in violation of their warranty obligations to Plaintiff Kemp and the Nationwide and Connecticut Classes as more fully set forth herein.

72.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332(a) and (d).

73.     Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

74.     Nissan is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

75.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

76.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

77.     In its Limited Warranty, Nissan expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. Nissan provides the following basic coverage warranty in its 2017 Warranty Information Booklet, which upon information and belief, is substantially identical for all Class Vehicles: "The basic coverage period is 36 months or 36,000 miles, whichever comes first.  This warranty covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan . . . ."

78.     Nissan's Limited Warranty is a written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The Class Vehicles' implied warranty of merchantability is covered by 15 U.S.C. § 2301(7).

79.     With respect to Plaintiff's purchase her 2019 Altima, the terms of Nissan's written warranty and implied warranty or merchantability became part of the basis of the bargain between Nissan, on the one hand, and Plaintiff on the other.

80.     Nissan breached the implied warranty of merchantability.  Plaintiff's 2019 Altima suffer from the Emergency Braking Defect, as described above, which renders her car unmerchantable.

81.     Nissan breached its express Limited Warranty by refusing to repair the defective Emergency Braking Systems in the Class Vehicles.  Plaintiff presented her vehicles for repair after the Emergency Braking System in her vehicle failed, providing Nissan an opportunity to cure, and Nissan failed to repair the defects in her vehicle.

82.     Further, Nissan has refused to provide an adequate warranty repair for the Emergency Braking Defect, thus rendering the satisfaction of any notice requirement futile.  As stated above, customers that have presented their vehicles for warranty repair due to the Emergency Braking Defect have not been offered any adequate repair.

83.     At the time of the sale to Plaintiff, Nissan knew, should have known, or was reckless in not knowing of the vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Emergency Braking Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiff to resort to an informal dispute resolution procedure and/or afford Nissan a reasonable opportunity to cure its breach of warranties is excused and thus deemed satisfied.

84.     The amount in controversy of Plaintiff's individual claim meets or exceeds the sum of $25 and any other statutory minimum required to maintain this count.

85.     As a direct and proximate result of Nissan's breaches of its Limited Warranty and the implied warranty of merchantability, Plaintiff have sustained damages in an amount to be determined at trial.

86. Plaintiff, individually, seeks all damages permitted by law, including the diminution in value of their vehicles, in an amount to be proven at trial.

**B.      Claims Brought on Behalf of the Connecticut Class**

**COUNT 2**
**BREACH OF EXPRESS WARRANTY**

87. Plaintiff incorporates by reference each allegation set forth in paragraphs 1-86.

88. Plaintiff Kemp brings this Count individually and on behalf of the other members of the Connecticut Class (the "Class," for purposes of this Count).

89. Nissan is and was at all relevant times a merchant with respect to the Class Vehicles. The Emergency Braking Defect was present at the time of sale to Plaintiffs and as such Nissan is required to repair or replace the Class vehicles pursuant to the terms of the written warranty.

90. In its Limited Warranty, Nissan expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period. Nissan provides the following basic coverage warranty in its 2017 Warranty Information Booklet, which upon information and belief, is substantially identical for all Class Vehicles: "The basic coverage period is 36 months or 36,000 miles, whichever comes first.  This warranty covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan . . . ."

91. The Emergency Braking Defect is a defect in materials and workmanship that differs from the manufacturer's intended specifications. Nissan claimed the Emergency Braking System uses radar to detect the possibility of a collision with vehicles or pedestrians. In its intended functionality, the Emergency Braking System will apply an emergency brake, causing the vehicle to decelerate and stop, in the event that an imminent collision is detected." Instead the

Emergency Braking Defect causes the Class Vehicles to stop without warning during normal vehicle operation posing safety risks to drivers, passengers, and others.

92.     Nissan's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles.

93.     Nissan breached its express warranty to repair defective parts in the Class Vehicles.  Nissan has not repaired the Class Vehicles' Brake System Defect.  Plaintiff Kemp presented her vehicle for repair after the Emergency Braking System in her vehicle failed, and Nissan failed to repair or replace the Emergency Braking System.

94.     Further, Nissan has refused to provide an adequate warranty repair for the Brake System Defect, thus rendering the satisfaction of any notice requirement futile.  As stated above, customers that have presented their vehicles for warranty repair due to the Emergency Braking Defect, including Plaintiff, have not been offered any adequate repair.

95.     The Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Nissan has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

96.     Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

97.     Also, as alleged in more detail herein, at the time that Nissan warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Nissan improperly concealed material facts regarding its Class

Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

98.     As a direct and proximate result of Nissan's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 3**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

99.     Plaintiff incorporates by reference each allegation set forth in paragraphs 1-98.

100.     Plaintiff brings this Count individually and on behalf of the other members of the Connecticut Class (the "Class," for purposes of this Count).

101.     Nissan is and was at all relevant times a merchant with respect to motor vehicles under Connecticut law. Nissan extended an implied warranty of merchantability to Plaintiff because the dealer from which

102.     Pursuant to Conn. Gen. Stat. Ann. § 42a-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

103.     The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.  Specifically, the Class Vehicles suffer from the Emergency Braking Defect, described above.

104.     Plaintiff Kemp presented her vehicle for repair after the Emergency Braking System in her vehicle failed, and Nissan failed to repair or replace the Emergency Braking System.

105.    The dealer that sold Plaintiff her car acted as the apparent agent of Nissan as it relates to representations related to the Emergency Braking System and the warranties associated therewith. Nissan's 2019 Warranty Information Booklet is a document prepared and distributed by Nissan (not Plaintiff's dealer) with new vehicles, including the vehicle Plaintiff purchased. In that document, Nissan expressly states that Nissan is the warrantor and that it is making a warranty to Plaintiff as the original purchaser. Nissan also expressly claims that this warranty extends even to subsequent purchasers of the vehicle, so that Plaintiff could pass on the value of this promise. This express warranty expressly states that Nissan is the warranting party for the vehicle and does not disclaim any implied warranty extending from Nissan to customer but instead states that "ANY IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS FOR APARTICULAR PURPOSE SHALL BE LIMITED TO THE DURATION OF THIS WRITTEN WARRANTY." (emphasis in original). Plaintiff had a reasonable expectation that any implied warranties related to the vehicle were provided by Nissan itself and as a result gave rise in Plaintiff to the reasonable belief that the Nissan dealer from whom Plaintiff purchased her vehicle was the apparent or actual agent of Nissan as it relates to implied warranties in the vehicle.

106.    For similar reasons, the dealer that sold Plaintiff her car acted as the actual agent of Nissan as it relates to representations related to the Emergency Braking System and the warranties associated therewith. In addition to the statements identified in the previous paragraph, the Express Warranty states that "Both Nissan and your Nissan dealer are dedicated to serving all your automotive needs. Your complete satisfaction with your vehicle and your Nissan dealer are our primary concerns." This statement is a manifestation that the dealer is the agent acting on behalf of Nissan as it relates to warranty of the vehicle. In selling the vehicle to

Plaintiff the dealer accepted that it was acting as the agent of Nissan and Plaintiff understood that the dealer was and is acting on behalf of Nissan as it relates to warranties of the vehicle, including any implied warranties.

107. Further, Nissan has refused to provide an adequate warranty repair for the Emergency Braking Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty repair due to the Emergency Braking Defect, including Plaintiff, have not been offered any adequate repair.

108. Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and Nissan's breach of the warranty of merchantability.

109. As a direct and proximate result of Nissan's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 4**
**FRAUDULENT CONCEALMENT**

110. Plaintiff incorporates by reference each allegation set forth in paragraphs 1-109.

111. Plaintiff brings this Count individually and on behalf of the other members of the Connecticut Class (the "Class," for purposes of this Count).

112. Nissan was aware of the Emergency Braking Defect within the Class Vehicles when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

113. Having been aware of the Emergency Braking Defect within the Class Vehicles, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Emergency Braking Defect, Nissan had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

114.     Nissan unlawfully concealed and failed to disclose the Emergency Braking Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

115.     Further, Nissan has learned more about the Emergency Braking Defect and has intentionally concealed and suppressed that information; Nissan has failed to recall the Class Vehicles or otherwise inform the Class members of the Emergency Braking Defect.

116.     For the reasons set forth above, the Emergency Braking Defect within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

117.     In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on Nissan to disclose known material defects with respect to the Class Vehicles.

118.     Had Plaintiff and the other members of the Class known of the Emergency Braking Defect within the Class Vehicles, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

119.     Through its omissions regarding the Emergency Braking Defect within the Class Vehicles, Nissan intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

120.     As a direct and proximate result of Nissan's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Emergency Braking Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT 5
## UNJUST ENRICHMENT

121.     Plaintiff incorporates by reference each allegation set forth in paragraphs 1-120.

122. Plaintiff brings this Count individually and on behalf of the other members of the Connecticut Class (the "Class," for purposes of this Count).

123. Nissan has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Nissan's concealment of the Emergency Braking Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

124. Nissan has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

125. It is inequitable and unconscionable for Nissan to retain these benefits.

126. Because Nissan concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Nissan's misconduct.

127. Nissan knowingly accepted the unjust benefits of its wrongful conduct.

128. As a result of Nissan's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

## VII. Relief Requested

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Connecticut Class, respectfully requests that the Court enter judgment in her favor and against Defendants Nissan NA and Nissan MC as follows:

a. an order certifying the proposed Connecticut Class as requested herein, including subclasses, designating Plaintiff as named representative of the Classes, and designating the undersigned as Class Counsel;

b.      a declaration that the Emergency Braking Systems in the Class Vehicles are defective;

c.      a declaration that Nissan is financially responsible for notifying all Class members about the defective nature of the Class Vehicles;

d.      an order enjoining Nissan from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles;

e.      an order requiring Nissan to recall and permanently repair the Class Vehicles, within a reasonable time period and at no cost to Class members, so that they no longer possess the Emergency Braking Defect;

f.      an award to Plaintiff and the other Class members of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

g.      an order that Nissan must disgorge, for the benefit of Plaintiff and the other Class members, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiff and the other Class members;

h.      an award of attorneys' fees and costs as allowed by law;

i.      an award of pre-judgment and post-judgment interest, as provided by law; and

j.      such other relief as may be appropriate under the circumstances.

## VIII.   **Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  January 28, 2020                    Respectfully submitted,

By:*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR 23045)
Benjamin A. Gastel (BPR 28699)
**BRANSTETTER, STRANCH & JENNINGS PLLC**

223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Phone: 615-254-8801
Fax: 615-255-5419
gerards@bsjfirm.com
beng@bsjfirm.com

Lynn A. Toops (No. 26386-49)
admitted *Pro Hac Vice*
Lisa M. La Fornara* (No. 35280-53)
admitted *Pro Hac Vice*
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN  46204
Phone: 317-636-6481
Fax: 317-636-2593
ltoops@cohenandmalad.com
llafornara@cohenandmalad.com

## CERTIFICATE OF SERVICE

I certify that on this January 28, 2020, I electronically filed the foregoing document using the Court's CM/ECF system, and a copy of this filing will be sent electronically to the registered participates as identified on the Notice of Electronic Filing. The following will receive service via the Court's CM/ECF system at the email addresses listed below or by U.S. Mail pre- paid postage:

**Brigid M. Carpenter**
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC (Nash)
211 Commerce Street
Suite 800
Nashville, TN 37201
(615) 726-5600
Email: bcarpenter@bakerdonelson.com

*Attorney for Nissan North America, Inc.*
*and Nissan Motor Co., Ltd.*

**E. Paul Cauley , Jr.**
**S. Vance Wittie**
Drinker, Biddle & Reath, LLP (Dallas Office)
1717 Main Street
Suite 5400
Dallas, TX 75201
(469) 357-2500
Fax: (469) 327-0860
Email: paul.cauley@dbr.com
Email: Vance.Wittie@dbr.com

*Attorneys for Nissan North American, Inc.*

*/s/ J. Gerard Stranch, IV*